# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>             Plaintiff,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., DRAGGIN' Y CATTLE COMPANY INC., and ROGER and CARRIE PETERS, individuals,<br><br>             Defendants. | **CV-14-83-BMM**<br>**CV-19-34-BMM**<br><br>**ORDER** |
| DRAGGIN' Y CATTLE COMPANY, INC., and ROGER and CARRIE PETERS, individuals,<br><br>             Plaintiffs,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C.,<br><br>             Defendant/Third-Party Plaintiff<br><br>vs. | |

1

| NEW YORK MARINE AND |
| GENERAL INSURANCE |
| COMPANY, |
| |
| Intervenor/Third-Party Defendant. |

**INTRODUCTION**

After five-years, two different courts, twice as many judges, and a number of summary judgment motions, this Court and the parties remain well-acquainted with the facts of this case. Here's a brief recap: Junkermier, Clark, Campanella, Stevens, P.C. ("JCCS") took out an insurance policy with New York Marine and General Insurance Company ("NYM"). (Doc. 366 ¶ 5; Doc. 372 ¶ 1.) Draggin' Y Cattle Company, Inc. sued Larry Addink and JCCS in Montana state court. (*See* Doc. 389 ¶ 4.) NYM defended JCCS in that action. (*Id.* ¶ 5.)

The parties disagreed over the best way to proceed on that action. Draggin' Y and JCCS, without NYM's consent, agreed to a stipulated settlement for $10 million. Draggin'Y signed a covenant not to execute, and, JCCS, in turn, assigned its rights under its insurance policy with NYM to Draggin' Y. In response, NYM filed a declaratory action and breach of contract claim against JCCS in this Court. (Doc. 1).

NYM asked this Court (1) for a declaratory judgment that NYM would not be liable for the stipulated judgment; (2) for a declaratory judgment that NYM did not owe any continuing duties to JCCS under the insurance contract; and (3) damages that arose from JCCS's breach of its contractual duties. (Doc. 1 at 11-15.) JCCS filed a number of counterclaims, and after four years of litigating those counterclaims in this Court, voluntarily dismissed them on May 16, 2019. (Doc. 306.)

Contemporaneous with this litigation, the state court proceeding moved forward with JCCS and Draggin' Y as plaintiff and defendants. NYM intervened initially to contest whether the $10 million stipulated settlement proved reasonable. After JCCS voluntarily had dismissed its claims in this Court, it filed nearly identical claims against NYM in the state court proceeding. (*Compare* Doc. 48 at 15-19 *with* Doc. 340-15 at 2-5.)  JCCS's action in bringing claims in the state court case transformed NYM from intervenor to a party. NYM used this new-found party status to remove the state court proceeding to federal court. (Doc. 340-17, 18, 19.) This Court consolidated the removed action with NYM's declaratory judgment and breach of contract action. (Doc. 376.) Both parties have moved for summary judgment. (Doc. 364 (JCCS) and Doc. 370 (NYM).) The parties fully briefed the motions and the claims stand ripe for review.

3

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Collusion*

Defendants JCCS, Draggin' Y, and Roger and Carrie Peters (collectively "Defendants") have moved for summary judgment on the issue of collusion. (Doc. 365 at 3.) They argue that the doctrines of collateral estoppel and res judicata preclude NYM from arguing whether JCCS and Draggin' Y improperly colluded in deciding to enter the stipulated judgment. Defendants argue that NYM could have raised alleged collusion in the state court's reasonableness hearings. (*Id.*)

As NYM points out, however, collusion does not stand alone as an issue or claim of defense made by any party. Neither of NYM's claims for relief require it to prove collusion. (*See* Doc. 1.) None of Defendants' affirmative defenses require them to prove that collusion did not exist. (*See* Doc. 258.) It appears that Defendants move for summary judgment to prevent NYM from presenting evidence of collusion. Defendants more properly should raise that issue in a motion in limine, rather than in a motion for summary judgment. Defendants' motion for summary judgment regarding alleged collusion is denied.

*Breach of Contract Claim*

Defendants also move for summary judgment on the issue of damages that NYM alleges may have arisen from the breach of contract claim. NYM's Chief

4

Claims Officer Paul Kush explained at a deposition that NYM seeks damages only for expenses that stem from NYM's defense of JCCS. Defendants argue that NYM cannot recoup those costs as damages in light of NYM's duty to defend and incur those costs. Defendants contend that allowing NYM to recoup those costs as damages would "retroactively eliminate or nullify [NYM's] duty to defend" JCCS. (Doc. 365 at 12.) And generally, under Montana law, insurers cannot recoup defense costs except in limited circumstances, none of which Defendants argue are present here. (*Id.* at 13-14.)

Defendants' arguments attempt to cast a standard breach of contract claim for damages into something it is not. NYM has not made a claim to recoup attorney's fees. It instead asserts a claim for damages suffered from a breach of contract. Montana Code Ann. § 27-1-311 governs damages under a breach of contract claim. Section 27-1-311 provides that "the amount which will compensate the party aggrieved for all the detriment which was proximately caused" generally will represent the measure of damage for a breach of contract. *Id.* NYM's claim falls squarely within this framework and § 27-1-311 entitles NYM to bring a claim for damages.

Defendants make one counterargument. Defendants contend that NYM's damages claim falls outside the statute because the stipulated judgment did not

"proximately cause" the damages. (Doc. 391 at 8-9.) Defendants claim that NYM would have incurred costs defending JCCS regardless of the settlement based on NYM's duty to defend JCCS.

This argument misses the point. NYM premises its argument on the fact that the settlement "rendered worthless all of the time, effort and money that NYM spent defending" JCCS. (Doc. 383.) Had the settlement not occurred, "the time, effort and money that NYM spent defending" JCCS would not have been rendered worthless.

Moreover, the circumstances presented here differ from the cases cited by Defendants. The Montana Supreme Court in *Travelres Casualty and Surety Company v. Ribi Immunochem Research, Inc.*, 108 P.3d 469 (Mont. 2005), faced a claim by the insurer to recover costs expended in defending an insured under a reservation of rights. The insured filed a declaratory judgment action based on whether the policy's "pollution exclusion" barred recovery for the intentional disposal of hazardous wastes over a three-year period. *Id.* at 479-80. The Montana Supreme Court simply had to interpret the policy language to decide the coverage question. Ribi provided timely and adequate notice of its intent to recoup its costs. *Id.* at 480. Here, NYM alleges that JCCS's conduct during the litigation breached

the terms of the insurance contract. In short, that case was about an insurance policy; this claim is about an insured's actions.

To refuse to allow insurance companies to seek damages in this type of scenario would topple the delicate balance of incentives that Montana law has placed on insured and insurers. As these parties well know, stipulated judgments prove presumptively reasonable when entered after an insurer refuses to defend an insured. *Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 941 (Mont. 2019). This presumption encourages insurances companies to defend insureds and prevents those insurance companies from retaining too much power in the insured-insurer relationship.

By contrast, if insurance companies could not bring a suit for damages of the type claimed here, it would be the insureds who retain too much power in the insured-insurer relationship. An insurance company will always possess the duty to defend a claim that falls under its insurance contract with the insured. Insureds would obtain a defense at no risk of every having to pay for the costs of that defense without the insurer's ability to bring a suit, even if the insured decides to collude with the party bringing a claim under the insurance policy.

## NYM'S MOTION FOR SUMMARY JUDGMENT

NYM filed a motion for summary judgment on both its claim for declaratory judgment and its claim for breach of contract. (Doc. 370.) NYM seeks summary judgment based on the following undisputed facts:

> (1) JCCS purchased a policy that provided $2 million in limits, afforded NYM the right to control the defense of claims and required JCCS to cooperate in the defense of the claims that it tendered to NYM and to not settle any claims without NYM's written authorization; (2) JCCS asked NYM to defend and indemnify the litigation brought by Draggin' Y and the Peters, (3) NYM defended JCCS at all times in that litigation, (4) JCCS entered into a stipulated judgment in excess of policy limits without NYM's written authorization or approval and (5) the defendants had not obtained a judicial determination that NYM had abandoned the defense of the litigation against JCCS or breached some other duty

(*Id.* at 22.)

If only this case were that simple. The insurance policy imposes on NYM more than a duty to defend. As Defendants point out, "the determination of the rights and obligations of the parties in this action requires consideration of not just NYM's defense, but also NYM's other contractual and statutory duties." (Doc. 388 at 4.)

JCCS had no duty to cooperate with NYM if NYM failed to comply with all of its material contractual duties to JCCS. JCCS could not have breached the

contract under those circumstances. A material breach of a contract "touches the fundamental purpose of the contract and defeats the object of the parties in making the contract." *R.C. Hobbs Enters., LLC v. J.G.L. Distributing, Inc.*, 104 P.3d 503, 508 (Mont. 2004). And as the Montana Supreme Court recognized, a material breach can "relieve[] the insured of the reciprocal contract duty to cooperate with the insurer." *Draggin' Y Cattle Co., Inc.*, 439 P.3d at 941.

NYM's summary judgment argument discusses how it complied with the duty to defend. NYM fails to discuss any of its other duties imposed under the insurance contract. Defendants maintain that NYM violated its contractual duties in a number of ways that could amount to a material breach of the contract. (Doc. 388 at 5-6.) Whether NYM committed these violations depends in part on whether NYM "had a reasonable basis in law or fact for contesting the claim or the amount of the claim." MCA § 33-18-242(5). Under Montana law, this determination remains "generally a question of fact." *Draggin' Y*, 439 P.3d at 942.

In sum, NYM may prevail on both claims only if JCCS had a duty to cooperate with NYM. JCCS had that duty only if NYM had not breached the contract itself. And whether NYM had breached the contract itself depends on whether it had a reasonable basis in law or fact for contesting the claim—a genuine issue of material fact that must be resolved at trial. NYM's motion for summary

judgment must be denied. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986) (allowing summary judgment only in the absence of a "genuine issue of material fact")

## ORDER

IT IS ORDERED that Junkermier, Clark, Campanella, Stevens ("JCCS")'s motion for summary judgment on collusion and breach of contract (Doc. 364) is DENIED.

IT IS ORDERED that New York Marine ("NYM")'s motion for summary judgment (Doc. 370) is DENIED

DATED this 11th day of October, 2019.

_____
Brian Morris
United States District Court Judge