## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

NEW YORK MARINE AND
GENERAL INSURANCE
COMPANY,

             Plaintiff,

vs.

JUNKERMIER, CLARK,
CAMPANELLA, STEVENS, P.C.,
DRAGGIN' Y CATTLE COMPANY
INC., and ROGER and CARRIE
PETERS, individuals,

             Defendants.

_____

DRAGGIN' Y CATTLE COMPANY,
INC., and ROGER and CARRIE
PETERS, individuals,

             Plaintiffs,

vs.

JUNKERMIER, CLARK,
CAMPANELLA, STEVENS, P.C.,

             Defendant/Third-
             Party Plaintiff

vs.

**CV-14-83-BMM**
**CV-19-34-BMM**

**CONSOLIDATED ORDER**

1

NEW YORK MARINE AND
GENERAL INSURANCE
COMPANY,

                    Intervenor/Third-
                    Party Defendant.

## Introduction

The Court has a number of motions in this litigation currently pending
before it. This order addresses the motion of Draggin' Y Cattle Company
("Draggin' Y"), Roger and Carrie Peters ("the Peterses") and Junkermier, Clark,
Campanella, Stevens, P.C.'s ("JCCS") to request entry of judgment pursuant to the
reasonableness order (Doc. 392). It also addresses New York Marine and General
Insurance Company's ("NYM") Motion to Dismiss (Doc. 377). The order also
addresses the motion of Draggin' Y and the Peterses to join and/or substitute as
third-party plaintiffs, and for leave to assert third-party bad faith claims against
NYM (Doc. 393).

## Request for Entry of Judgment Pursuant to the Reasonableness
## Order (Doc. 392)

Draggin' Y, the Peterses, and JCCS filed a motion asking this Court to enter
the stipulated judgment that the Montana district court approved as fair and

reasonable. (Doc. 392.) The parties dedicate most of their briefing to the topic of whether this Court has the authority to enter the state court judgment. They dedicate little time explaining why the Court should enter the judgment now rather than at the end of this case or some other time. The arguments about entering the judgment now rather than later are best summarized as follows: "No judgment, no settlement. And if there is no settlement, then there is no case here." (Doc. 407 at 3.)

The Court will deny the parties' motion for now because the settlement does not require an entry of the stipulated judgment to bind the parties. The settlement contemplates the approval of the settlement as fair and reasonable and the entry of judgment as two separate events. and requires only approval to bind the parties. The settlement agreement states that the parties agree to "request . . . a hearing to approve the stipulated judgment as fair and reasonable and to enter judgment for the amount of that stipulated judgment." (Doc. 340-3 at 5.) The settlement agreement then says in the very next sentence that if "the Court does not *approve* the Stipulation for Entry of Judgment, then the parties stipulate that they will jointly move to have the Lawsuit rescheduled for trial." (*Id.* at 6 (emphasis added).); *see Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 946 (Mont. 2019) ("The parties . . . stipulated that the

settlement would not bind them unless the District Court *approved* it as 'fair and reasonable.'" (emphasis added)).

The Montana district court that approved the settlement as fair and reasonable read the settlement agreement in the same way as this Court. The Montana district court issued three orders, two of which are relevant here. First, the district court approved the settlement as fair and reasonable. (Doc. 340-14 at 17.) As a part of this order, the Montana district court determined that the Peterses, Draggin' Y, and JCCS were "bound by the terms of their settlement." (*Id.*) Second, the district court ordered that a separate judgment would be entered against JCCS. (*Id.*) These separate orders contemplate approval and entry as distinct events and bind the parties to the settlement agreement upon approval of the settlement amount as fair and reasonable.

Notably, the same counsel who filed the motion claiming "[n]o judgment, no settlement" have their names listed on the very same page in which the Montana district court determined that the parties were bound by the settlement agreement before that district court entered the stipulated judgment. (Doc. 340-14 at 17.) It seems reasonable to expect counsel to keep track of what happened in state court. This representation proves particularly troubling when counsel first made their "no judgment, no settlement" argument in their reply brief. At that point, counsel had

read and reviewed the response brief filed by NYM. NYM had not disclosed the state court decision stating that the parties were bound by the settlement. This failure by NYM likely triggered the obligation of counsel to disclose the adverse state court decision or at minimum prohibited counsel from making the "no judgment, no settlement" argument. *See* Mont. Rules of Prof'l Conduct Rule 3.3(a)(2) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.") The Court does not suggest that the parties committed a violation of Montana's Rules of Professional Conduct, but counsel must do better moving forward.

The parties make other arguments related to the Federal Rules of Civil Procedure, claiming that certain rules require entry of the state court judgment. None of those rules require the Court to enter the state court judgment now. For this reason and because the settlement agreement binds the parties even without entry of the judgment, the Court denies for now the parties motion to enter the state court stipulated judgment.

### NYM's Motion to Dismiss (Doc. 377)

NYM moved to dismiss JCCS's claims against NYM in the removed action under Federal Rules of Civil Procedure 12(b)(1) and (6). NYM makes two

arguments in support of its motion. First, they argue that JCCS lacks "standing" to bring claims against NYM because they have assigned all rights to these claims to Draggin' Y and the Peterses. Second, they argue that the statute of limitations bars JCCS's UTPA claims.

*Legal Standard*

Defendants can bring a Rule 12(b)(1) defense in two separate ways. Defendants can make a "factual" attack, which contests the truth of plaintiff's factual allegations. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Alternatively, defendants can make a "facial" attack, which contests whether plaintiff's allegations are sufficient on their face to invoke federal jurisdiction. *See id.* Here, we have a facial attack. Under a facial attack, the Court acts just as it would under a motion to dismiss under Rule 12(b)(6). The Court must accept plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor. *See id.*; *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156 (9th Cir. 2017) (same).

*JCCS's Standing to Bring Claims*

NYM claims that JCCS cannot bring its breach of contract claim and UTPA claim because it assigned all rights to bring these claims to Draggin' Y and the Peterses. (Doc. 377 at 19-21.) JCCS does not dispute that it assigned all rights to

6

bring these claims to Draggin' Y and the Peterses. JCCS instead argues that

Federal Rule of Civil Procedure 17(a)(3) ("Rule 17") allows the case to move

forward as long as Draggin' Y and the Peterses have joined or are substituted into

JCCS claims. (Doc. 397 at 10-11.)

Federal Rule of Civil Procedure 17(a)(3) states that a court cannot dismiss a

case "for failure to prosecute in the name of the real party in interest until, after an

objection, a reasonable time has been allowed for the real party in interest to ratify,

join, or be substituted into the action." At minimum, Rule 17 applies when parties

have made a an "understandable" error in naming the real party in interest. *Jones v.

Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017) (quoting

*Goodman v. United States*, 298 F.3d 1048, 1053-54 (9th Cir. 2002)). Parties must

"hardly [provide] the best excuse" for their error in naming the proper party to

receive relief under Rule 17, but the excuse must nonetheless be reasonable. *Id.*

Here, the Court will grant JCCS relief under Rule 17 because its error proves

reasonable. As NYM explained in its own motion to dismiss, JCCS attempted to

bring its breach of contract claims and UTPA claims on May 10, 2019, in the state

court action, later removed and consolidated with the federal action. (Doc. 378 at

16.) The Montana district court did not approve the stipulated judgment—which as

discussed in more detail below acts as the date that the parties' settlement

7

agreement went into effect and thus the date that JCCS assigned its rights to Draggin' Y and the Peterses—until June 17, 2019. (*Id.*) Thus, at the time that JCCS filed its motion to bring claims in the removed action, JCCS remained the real party in interest.

Then, "without any notice" to either party, the Montana district court granted JCCS motion to bring its breach of contract claims and UTPA claims in that court. (*Id.* at 17.) The district court did not consult JCCS or any of the parties on whether JCCS remained the real party in interest now that the stipulated judgment had been approved. (*See id.*) This Court will not punish JCCS because the Montana district court failed to give JCCS a chance to amend its motion in light of the settlement agreement going into effect.

NYM claims that the timing of the motion of Draggin' Y and the Peterses to join and/or substitute JCCS regarding the claims that are the subject of this motion to dismiss "reeks of gamesmanship and runs afoul of the purpose" of Rule 17(a). The Court views the timing of the motion differently. If JCCS and Draggin' Y made an honest mistake, the logical time to try and fix that mistake with a motion to join or substitute would be *after* that mistake has been pointed out. That's what happened here with Draggin' Y and the Peterses motion to join or substitute.

*Statute of Limitations for JCCS's UTPA Claims*

8

NYM also claims that JCCS's UTPA claims must be dismissed for having been filed beyond the statute of limitations period. (Doc. 378 at 22-25.) JCCS again does not dispute NYM's claim that the statute of limitations has passed. JCCS instead argues that equitable tolling applies here and allows them to bring their UTPA claims nonetheless.

The Court applies Montana's equitable tolling law for determining whether it applies to claims brought under Montana state law. Montana courts generally follow a three-part test to determine whether equitable tolling applies. Equitable tolling may apply when the following three criteria are met:

(1) timely notice to the defendant within the applicable statute of limitations in filing the first claim;

(2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and

(3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*See Erickson v. Croft*, 760 P.2d 706, 708-09 (Mont. 1988); *accord Schoof v. Nesbit*, 316 P.3d 831, 840 (Mont. 2014).

Montana has embraced a broad application of equitable tolling that extends to situations that serve "broader purposes than merely those embodied by this test." *See Schoof*, 316 P.3d at 840. Specifically, equitable tolling in Montana seeks to

9

"avoid forfeitures and allow good faith litigants their day in court." *Brilz v. Metro. Gen. Ins. Co.*, 285 P.3d 494, 499 (Mont. 2012) (quoting *Addison v. State*, 578 P.2d 941, 945 (Cal. 1978)). Montana has recognized the need to apply equitable tolling sparingly while "reject[ing]" an approach that denies plaintiffs a claim "when such an approach would serve no policy purpose." *Weidow v. Uninsured Emp'rs' Fund*, 246 P.3d 704, 709 (Mont. 2010); *Schoof*, 316 P.3d at 840.

The Court will exercise its discretion to allow JCCS to bring its UTPA claim. JCCS alleges that NYM violated the UTPA in four different ways (Doc. 340-15 at 5 (alleging violations of Montana Code Annotated ("MCA") § 33-18-201(1), (4), (5), and (6)).) As related to the first part of Montana's equitable tolling test, JCCS first brought a claim for violating MCA § 33-18-201(1) on June 8, 2015, well within the statute of limitations for UTPA violations. As for whether JCCS acted in good-faith in filing this new claim, JCCS has offered valid reasons for wanting to consolidate all claims in the now removed state court action. (Doc. 397 at 13-14.) Those valid reasons include the quicker resolution of novel issues of state law present in this case that the Montana Supreme Court could resolve through direct appeal rather than through a certified question from the Ninth Circuit. (*Id.*)

Under the prejudice part of Montana's equitable tolling test, NYM will not suffer prejudice from the claim for violating MCA § 33-18-201(1). JCCS first alleged violations by NYM under MCA § 33-18-201(1) more than four and one-half years ago. Even during the short period of time that this claim was not pending in this Court, NYM knew that JCCS intended to file that claim in the state court action. NYM will not suffer prejudice such that JCCS must be precluded from bringing its counterclaim under MCA § 33-18-201(1).

Although the reason is slightly different, NYM also will not suffer prejudice from allowing JCCS's UTPA claim to proceed on the grounds of violating MCA § 33-18-201(5) and (6). Those claims have never been pending before this Court until now. That said, the factual history related to claims for violating subsections (5) and (6) will overlap with other claims brought by either NYM or JCCS. This factual overlap eliminates nearly all prejudice that NYM would otherwise suffer.

For example, JCCS seeks to bring its UTPA claim under MCA § 33-18-201(5), which prohibits an insurer from "fail[ing] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." NYM's complaint states that "[NYM] agreed to defend JCCS and Addink, subject to a reservation of [NYM]'s rights. (Doc. 1 ¶ 18; *see* Docs. 1 at 22 and 1-1.) Additionally, JCCS's breach of contract claim—which NYM does not

attempt to dismiss outside of claiming that JCCS has not right to bring any claim—overlaps with subsection (5). Specifically, JCCS alleges in its breach of contract claim that "NYM had an obligation implied by Montana law to affirm or deny coverage for the underlying claims within a reasonable time after notice of the claims." (Doc. 340-15 ¶ 9.)

JCCS also seeks to bring a claim alleging a violation of MCA § 33-18-201(6), which prohibits an insurer from "neglect[ing] to attempt in good faith to effectual prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." NYM's complaint discusses the parties' attempts at mediation. (*See* Doc. 1 ¶ ¶ 21-25, 32, 34.) Further, JCCS's breach of contract claim has factual overlap with a violation of subsection (6). JCCS alleges in its breach of contract claim that "NYM owed JCCS a fiduciary duty of good faith to protect JCCS by using the $2 million in liability coverage, for which JCCS had paid, to settle the case." (Doc. 340-15 ¶ 7; *see* 340-15 ¶¶ 10, 11 (alleging, among other things, that liability was reasonably clear "since at least November 2008" and further discussing settlement discussions).)

Thus, even though these claims are not currently pending before the Court, NYM will not start from a blank slate in defending against these counterclaims. For the past four years, the UTPA claim and factually similar claims were pending

12

in federal court or NYM knew that they would be brought in state court. NYM has had four years of notice and time to strategize, undertake discovery, and file motions related to these claims.

The Court recognizes, of course, the irony of JCCS's request. JCCS finds themselves in this position because they voluntarily dismissed their UTPA claim in an attempt to file them in state court. Their attempt failed, but proves largely irrelevant to the Court's analysis. It does not speak to whether NYM is prejudiced now. And, as discussed above, JCCS has offered valid reasons for wanting these claims to be heard in state court as opposed to federal court. Thus, their voluntary dismissal does not show a lack of good faith in refiling the UTPA claim after the statute of limitations period had run. As this protracted litigation currently stands, JCCS attempts to bring valid claims and equitable tolling counsels in favor of allowing the UTPA claims to proceed on the grounds that NYM violation MCA § 33-18-201(1), (5), and (6).

NYM will suffer prejudice from JCCS's UPTA claim on the grounds that NYM violated MCA § 33-18-201(4). That claim prohibits an insurer from "refus[ing] to pay claims with conducting a reasonable investigation based upon all available information." MCA § 33-18-201(4). JCCS's breach of contract counterclaim does not share factual overlap related to whether NYM undertook "a

reasonable investigation." Likewise, NYM's complaint does not discuss the investigation it conducted in relation to this case. Subsection (4)'s lack of factual overlap with claims from either NYM or JCCS leads to prejudice against NYM if this claim were allowed to proceed.

In sum, the Court will allow the UTPA claim in part to move forward because the doctrine of equitable tolling counsels in favor of letting the claims proceed. JCCS's claim may proceed on the grounds that NYM violated MCA § 33-18-201(5) and (6). JCCS's claim is dismissed to the extent it alleges a violation of MCA § 33-18-201(4).

### Motion to Join and/or Substitute as Third-Party Plaintiffs, and for Leave to Assert Third-Party Bad Faith Claims Against NYM (Doc. 393)

Draggin' Y and the Peterses filed a motion asking the Court both to join or substitute them as third-party plaintiffs in JCCS'Scounterclaims against NYM and to file their own third-party bad faith claims against NYM. (Doc. 393.) JCCS objected to both requests.

#### *Join or Substitute as Third-Party Plaintiffs*

The Court will grant the request of Draggin' Y and the Peterses to join or substitute in JCCS's counterclaims. Draggin' Y and the Peterses make a number of arguments about why they should be allowed to join or substitute as third-party

plaintiffs in JCCS's counterclaims against NYM. The Court could grant their motion based on either substitution under Federal Rule of Civil Procedure 25 or 20 and will address each in turn.

Federal Rule of Civil Procedure 25 ("Rule 25") governs substitution of parties. Rule 25(c)(3) states that if "an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." This rule applies only when the interest has been transferred "during the pendency of an action." 7C Charles Allan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1958 (3d ed. Aug. 2019 update). The rule simply attempts "to allow the action to continue unabated when an interest in the lawsuit changes hands." *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (quoting *In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981)).

Under this rule, Courts can take one of two routes. First, the Court can do nothing. "The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named." *Id.* Second, the court can enter an "order of joinder" as "merely a discretionary determination . . . that the transferee's presence would facilitate conduct of the litigation." *Id.*

NYM limits its arguments to whether Rule 25 applies at all. It argues that any transfer of interest here occurred before the litigation began, not during. Thus, according to NYM, Rule 17 would apply rather than Rule 25. (*See* Doc. 402 at 6-8.)

As discussed in more detail below, however, the settlement agreement bound both parties as of June 17, 2019. The transfer of interest happened on that date, which fell after this litigation began. Rule 25, not Rule 17, applies and JCCS's claims may proceed. As JCCS's successors, Draggin Y' and the Peterses will be bound by whatever judgment JCCS receives on these claims even though the claims were not originally brought in their name. The Court also will exercise its discretion to enter an order joining Draggin' Y and the Peterses to these claims. *See In re Bernal*, 207 F.3d at 598.

Alternatively, Draggin' Y and the Peterses claim that Federal Rule of Civil Procedure 20 ("Rule 20") allows this Court to join them as parties. Rule 20(a) governs permissive joinder of parties. It states that "persons" may join in one action as plaintiffs "if . . . [1] they assert any right to relief jointly . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . [2] any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A) and (B).

Rule 20 allows for "fairness and judicial economy" and "[t]he purpose of the [permissive joinder] rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Rose v. Montana*, No. 10-cv-2, 2010 WL 3724824, at *13 (D. Mont. July 14, 2010); *see* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1652 (3d ed. Nov. 2019 Update). Rather than apply a rigid test, courts determine on a case by case basis whether a particular scenario satisfies Rule 20's requirement for a single transaction or occurrence. *See Rose*, 2010 WL 3724824, at *13.

Draggin' Y and the Peterses have met the requirements and Rule 20 and the Court will exercise its discretion to permissively join them to JCCS's counterclaims. There is no question that Draggin' Y and the Peterses satisfy the single transaction or occurrence requirement. Additionally, they have satisfied Rule 20's other requirement regarding convenience and the avoidance of multiple lawsuits. Thus, this Court will permissively allow them to join JCCS's claims against NYM.

### *Leave to File Third-Party Bad Faith Claims*

Draggin' Y and the Peterses also seek to bring a third-party bad-faith claims against NYM. They seek to bring both common-law and UTPA bad-faith claims.

17

(*See* Doc. 393-1 at 20-22.) Draggin' Y and the Peterses claim that they can file these claims under either Federal Rule of Civil Procedure 13 or 14. (*See* Doc. 394 at 19-23.)

Federal Rule of Civil Procedure 13(e) governs, in part, when courts "may" allow a party to amend a pleading so the party can "assert a counterclaim that matured or was acquired by the party after serving an earlier pleading." A third-party claimant does not acquire a claim under Montana's UTPA until "after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim." MCA § 33-18-242(6)(b). A case is settled under Montana's UTPA from the date that "a binding contractual agreement is made through which the parties arrange for final disposition of the case." *Carlson v. State Farm Mut. Auto Ins. Co.*, 76 F. Supp. 2d 1069, 1078-79 (D. Mont. 1999).

Federal Rule of Civil Procedure 15(a) also governs when parties can amend pleadings and this Court has used Rule 15 as guidance for deciding when to give parties leave under Rule 13(e). *See Saypo Cattle Co. v. RMF Deep Creek, LLC*, No. 11-CV-10, 2012 WL 12887975, at *1 (D. Mont. Aug. 7, 2012). Rule 15 requires courts to grant leave to amend pleadings "when justice so requires." This is a "mandate . . . to be heeded," not taken lightly. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

18

Courts may decline to grant leave to amend only if there exists strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman*, 371 U.S. at 182).

Draggin' Y and the Peterses have met Rule 13's requirement that their claim did not mature until after filing other pleadings and the Rule 15 factors weigh in favor of granting them leave to amend their pleadings to include the proposed counterclaims. As related to Rule 13, neither Draggin' Y nor the Peterses had the right to bring their counterclaims until the Montana district court had approved the stipulated judgment as fair and reasonable. The Montana Supreme Court held that the settlement agreement did not bind JCCS and Draggin' Y and the Peterses until a court approved the settlement as reasonable. *See Draggin' Y Cattle Co. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 946 (Mont. 2019). Thus, Draggin' Y, the Peterses, and JCCS did not have a "binding contractual agreement" until the Montana district court approved the stipulated judgment as fair and reasonable on June 17, 2019. (Doc. 340-14 at 17); *see Carlson*, 76 F. Supp. 2d at 1078-79 (holding that parties have not entered a settlement until "the

date a binding contractual agreement is made through which the parties arrange for final disposition of the case" (emphasis removed)). Draggin' Y and the Peterses moved to file their third-party UTPA complaint and the common law complaint on September 26, 2019, three months after their claim had matured when the Montana district court approved the stipulated judgment.

As related to the Rule 15, the *Foman* factors all weigh in favor of granting Draggin' Y and the Peterses leave to file their counterclaim. Little or no evidence exists that Draggin' Y and the Peterses exercised undue delay in bringing their claims, or that they brought these claims in bad faith or due to some dilatory motive. Also, their motion has not resulted from a repeated failure to correct deficiencies in previously filed pleadings. This Court already has rejected NYM"s argument that allowing these claims would prove futile because NYM "may not be liable for statutory bad faith if the insurer had a reasonable basis in law or fact for contenting the claim or the amount of the damages." (Doc. 402 at 15.) Whether NYM had a reasonable basis in law or fact for contesting the claim or amount of damages presents a question for the jury, not this Court. *Draggin' Y*, 439 P.3d at 942

Further, little possibility exists that NYM will suffer any prejudice from the Court granting leave to file these claims. The Court explained above in discussing

20

JCCS's UTPA claim why NYM will not suffer prejudice for allowing that UTPA claim to proceed. The same reasons apply to the UTPA claim of Draggin' Y and the Peterses. The Court will allow Draggin' Y and the Peterses to proceed with a UTPA claim on the grounds that NYM violated MCA § 33-18-201(1), (5), and (6), but not on subsection (4). Similarly, NYM will not be prejudiced by the common law bad faith claim because UTPA claims simply represent the most common applications of common law bad faith claims. *See Story v. City of Bozeman*, 791 P.2d 767, 776 (Mont. 1990), *overruled on other grounds*, *Arrowhead Sch. Dist. No. 75 v. Klyap*, 79 P.3d 250 (Mont. 2003).

The Court rejects NYM's argument that the statute of limitations for common law and UTPA bad faith claims bars Draggin' Y and the Peterses' claims. Draggin' Y and the Peterses must bring their UTPA claim "[w]ithin 1 year from the date of the settlement of . . . the underlying claim." MCA § 33-18-242(7)(b). Other courts in this District have defined "date of the settlement" under § 33-18-242(7)(b) as the date "a binding contractual agreement is made through which the parties arrange for final disposition of the case." *Carlson*, 76 F. Supp. 2d at 1078-79. The parties did not have a binding contractual agreement until the Montana district court approved the stipulated judgment as fair and reasonable. *See Draggin' Y*, 439 P.3d at 946 ("The parties . . . stipulated that the settlement would

21

not bind them unless the District Court *approved* it as 'fair and reasonable.'" (emphasis added)). The Montana district court approved the stipulated judgment as fair and reasonable on June 17, 2019. (Doc. 340-14 at 17.) Draggin' Y and the Peterses' motion to bring these bad faith claims falls well within the three-year time limit.

Draggin' Y and the Peterses filed their common law bad faith claim within the statute of limitations. Common law bad faith claims must be brought within three years of the claim or cause of action accruing. *See* MCA §§ 27-2-102(2), 27-2-204(1); *Brewington v. Emp'rs Fire Ins. Co.*, 992 P.2d 237, 241 (Mont. 1999). A claim or cause of action accrues "when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court . . . is authorized to accept jurisdiction of the action." MCA § 27-2-102(1)(a). "Generally, 'all elements' includes a plaintiff's damages." *Draggin' Y Cattle Co., Inc. v. Addink*, 312 P.3d 451, 456 (Mont. 2013).

For now, the Peterses have alleged a counterclaim that falls within the statute of limitations. Accepting all allegations as true, the Peterses claim did not accrue until June 17, 2019. The statute of limitations would not bar their claim until June 17, 2022.

## ORDER

**IT IS ORDERED** that:

- Junkermier, Clark, Campanella, Stevens, P.C. (JCCS), Draggin' Y Cattle Company, Inc. ("Draggin' Y") and Roger and Carrie Peters Joint Request for Entry of Judgment Pursuant to the Reasonableness Order (Doc. 392) is **DENIED**, without prejudice;

- New York Marine and General Insurance Company's Motion to Dismiss (Doc. 377) is **GRANTED, IN PART**, and **DENIED, IN PART**. JCCS's UTPA counterclaim is dismissed to the extent it alleges violations of MCA § 33-18-201(4). The counterclaim may proceed on the grounds that NYM violated MCA § 33-18-201(1), (5), and (6); and

- Draggin' Y and Roger and Carrie Peters Motion to Join and/or Substitute as Third-Party Plaintiffs, and for Leave to Assert Third-Party Bad Faith Claims Against NYM (Doc. 393) is **GRANTED.** The proposed third-party bad faith claims filed as Doc. 393-1 are deemed filed as of January 13th, 2020, except to the extent that they allege a violation of MCA § 33-18-201(4).

DATED this 13th day of January, 2020.

_Brian Morris_
_____
Brian Morris
United States District Court Judge