# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., DRAGGIN' Y CATTLE COMPANY INC., and ROGER and CARRIE PETERS, individuals,<br><br>Defendants. | **CV-14-83-BMM**<br>**CV-19-34-BMM**<br><br>ORDER |
| DRAGGIN' Y CATTLE COMPANY, INC., and ROGER and CARRIE PETERS, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C.,<br><br>Defendant/Third-Party Plaintiff<br><br>vs. | |

1

| NEW YORK MARINE AND |
| GENERAL INSURANCE |
| COMPANY, |
| |
| Intervenor/Third-Party Defendant. |

| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, | |
|---|---|
| | Intervenor/Third-Party Defendant. |

## INTRODUCTION

Plaintiff New York Marine and General Insurance Company ("NYM") filed a motion in limine on December 27, 2019, asking this Court to preclude defendants from introducing any evidence regarding, or making any reference to, a statement by an adjustor for NYM that defense costs reduced the available policy limits under the NYM insurance policy. (Doc. 439.) Defendants JCCS and Draggin' Y Cattle Company, Inc. ("Draggin' Y"), and Roger and Carrie Peters ("Peterses"), individuals (collectively "Defendants") oppose the motion. (Doc. 457.) The Court originally informed the parties that it would conduct a hearing on all of NYM's motions in limine on February 7, 2020. That hearing was vacated to allow the parties to attend a settlement conference set at the request of the parties for February 7, 2020. The Court having reviewed the briefs filed by the parties has determined that the motion can be decided without the benefit of a hearing.

## BACKGROUND

NYM defended JCCS against claims brought by Draggin' Y and the Peterses under a reservation of rights and the parties' mutual understanding that insurance policy provided a coverage limit of $2 million. Thomas Jambor, an adjustor for NYM, sent a letter to JCCS's personal counsel confirming that NYM would not accept a settlement that called for payment of policy limits. (Doc. 159-1.) In particular, Mr. Jambor stated that NYM "cannot agree to accept liability in excess of its policy limits, which are eroded by defense expenses." (*Id.*) This reference to the erosion of policy limits by defense expenses related to a provision in the declarations page of the insurance policy. NYM claims that it backed off from this erosion by defense expenses in light of "the Montana-specific endorsement to the policy that changed terms of the policy so that limits were not reduced by defense costs." (Doc. 440 at 2-3.)

## DISCUSSION

The Court has allowed JCCS's first-party bad faith claims against NYM to proceed to trial. (Doc. 460.) Those claims include the allegation that NYM violated Montana Code Annotated § 33-18-201(1), which prohibits insurance companies from "misrepresent[ing] pertinent facts or insurance provisions relating to coverages at issue." Mr. Jambor's statement likely proves central to that allegation.

3

More importantly, Mr. Jambor's statement, and the response of JCCS, lie at the heart of this dispute. Mr. Jambor's statement represents one issue for the jury to consider as it sorts out the underlying dispute in the bad faith case of whether NYM's acted reasonably in adjusting the claim submitted by JCCS. Mr. Jambor's statement will be relevant to the jury's consideration of this issue.

Because the parties have previously attempted to construe this Court's statements about the facts of this case with legal conclusions, the Court feels it necessary to state that Mr. Jambor's statement hardly proves dispositive on the issue. JCCS's alleged response to Mr. Jambor's e-mail statement also appears relevant to this issue. JCCS cites to the deposition of Jerry Lehman of October 20, 2017, as evidence of the effect of Mr. Jambor's letter on JCCS. Mr. Lehman testifies in response to a question by Tim Strauch, counsel for Draggin' Y and the Peteres, his understanding of Mr. Jambor's e-mail statement:

Q: What did that mean to you?

A: Okay. So this is putting me on notice that all of the expenses that we had spent to date to defend the claim are starting to erode that $2 million worth of coverage that I had.

Q: Did you have any reason to believe that that information was not true at that time?

A: No, I did not.

4

(Doc. 375-30 at 55.)

An e-mail exchange between Tom Marra, personal counsel for JCCS, and Don Harris, co-counsel with Mr. Strauch, regarding their understanding of Mr. Jambor's e-mail statement will provide the jury with further context:

> In Kirk's last email in which he sent us additional correspondence, there is a November 11th from the Insurer that states that policy limits are being eroded by defense costs. You will recall that the Insurer initially took this position at the settlement conference until we produced the endorsement that says otherwise.

(Doc. 399 at 2.) Mr. Strauch was copied on the e-mail exchange. A few weeks earlier, on November 13, 2014, JCCS and Draggin' Y and the Peterses had entered the stipulated judgment. Patrick HagEstad continued to represent JCCS in its defense of a claim filed by its former client, Draggin' Y and the Peterses, until September 29, 2015.

The settlement conference at issue took place on November 12, 2014, a day after Mr. Jambor's letter. The e-mail exchange took place on December 10, 2014. The email exchange appears to indicate that all participants agreed that Mr. Jambor had backed off from his initially erroneous position at the settlement conference one day later. The jury ultimately will decide this question. The jury also will decide

5

whether JCCS entered into the stipulated judgment due, in part, to the statement in Mr. Jambor's letter.

In resolving this dispute, the jury will have to consider the response of JCCS's personal counsel, Mr. Marra, to the e-mail exchange:

Don:

Good point and not a problem.

Thanks,

Tom

*Id.* Mr. Marra's response appears to echo, in part, his agreement that Mr. Harris, counsel for Draggin' Y and the Peterses, could get him a draft of a brief the next day. Mr. Harris apparently sought to use Mr. Jambor's letter, with its mistaken view on defense costs eroding policy limits now apparently withdrawn by NYM, as support in a brief that NYM "was misrepresenting its policy." *Id.* The dates of the email exchange, December 10, 2014, and its discussion of briefs, leads the Court to conclude that Mr. Harris intended to use this information as ammunition at the original reasonableness hearing conducted by Judge Huss on December 15, 2014 (Doc. 5 at 13)—one day after the email exchange. All of these facts will provide context for the jury to use in resolving the bad faith claims. Mr. Marra will have a chance at trial to explain fully to the jury his response to the e-mail exchange.

The Court declines to allow any party—whether it be NYM in seeking to exclude Mr. Jambor's letter or Defendants seeking to hide behind claims of attorney-client privilege—to pick and choose which evidence the jury will get to consider in evaluating the breach of contract and bad faith claims at issue. The Court similarly declines to allow the parties to seize upon factual statements in the Court's orders as legal conclusions that the opposing party should be estopped from challenging with contradictory evidence at trial. The e-mail exchange and its significance appear to represent more pieces of the puzzle that the jury must solve in order to determine whether NYM acted unreasonably in adjusting the claim submitted by JCCS. The jury will have to grapple with this information, along with Mr. Jambor's letter, as it resolves JCCS's bad faith action against NYM.

## **ORDER**

Accordingly, **IT IS ORDERED** that this NYM's motion in limine (Doc. 439) regarding evidence that its adjustor informed JCCS that its policy limits would be reduced by defense costs is **DENIED**.

DATED this 3rd day of February 2020.

_____
Brian Morris
United States District Court Judge