IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., DRAGGIN' Y CATTLE COMPANY INC., and ROGER and CARRIE PETERS, individuals,<br><br>              Defendants. | **CV-14-83-BMM**<br>**CV-19-34-BMM**<br><br>**ORDER** |
| DRAGGIN' Y CATTLE COMPANY, INC., and ROGER and CARRIE PETERS, individuals,<br><br>              Plaintiffs,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C.,<br><br>              Defendant/Third-Party Plaintiff<br><br>vs. | |

1

| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, | |
|---|---|
| | Intervenor/Third-Party Defendant. |

## INTRODUCTION

Plaintiff New York Marine and General Insurance Company ("NYM") filed a motion in limine on December 27, 2019, asking this Court to exclude Defendants' expert witnesses from testifying at trial. (Doc. 444). Specifically, NYM seeks to exclude the testimony of Brad Anderson regarding the reasonableness of NYM's action in adjusting the insurance claim submitted by Defendant Junkermier, Clark, Campanella, Stevens, P.C. ("JCCS"). NYM also seeks to exclude the testimony of Jerry Lehman who was listed as a "hybrid witness" to provide testimony regarding JCCS's damages. JCCS and Defendants Draggin' Y Cattle Company, Inc. ("Draggin' Y"), and Roger and Carrie Peters ("Peterses"), individuals (collectively "Defendants") oppose the motion. (Doc. 454.)

The Court originally informed the parties that it would conduct a hearing on all of NYM's motions in limine on February 7, 2020. That hearing was vacated to allow the parties to attend a settlement conference set at the request of the parties

for February 7, 2020. The Court having reviewed the briefs filed by the parties has determined that the motion can be decided without the benefit of a hearing.

## BACKGROUND AND DISCUSSION

### A. Brad Anderson

NYM contends that Mr. Anderson's testimony should be excluded for three reasons: 1) he lacks qualifications for this opinions regarding standards of conduct applicable to insurers in Montana or insurance industry standards and practices; 2) his opinions regarding the likely outcome of the underlying case had JCCS gone to trial will represent legal conclusion in contravention of established law; and 3) his speculative opinions will not be reliable or helpful to the trier of fact. (Doc. 445 at 5-6.) NYM cites to the district court's order in *Messer v. State Farm Fire & Cas. Co.*, 2005 U.S. Dist. LEXIS 45983, at *10-11 (D. Ariz. 2005), to support its argument that simply being a lawyer who practices in bad faith litigation fails to provide sufficient expertise to testify as an expert witness in bad faith cases.

Mr. Anderson's experience differs from the lawyer excluded by the district court in *Messer*. The lawyer in *Messer* relied solely on 12 years of experience as a lawyer practicing in bad faith cases. *Id.* Mr. Anderson's disclosure outlines his relevant experience, including now more than 30 years of legal practice. (Doc. 446-1 at 7-9.) This practice includes representing insurance clients in bad faith

3

litigation, advising insurance clients in bad faith claims, and representing insurance companies in coverage dispute litigation. *Id.* Mr. Anderson also trained and educated insurance company employees in how to comply with industry standards and practices and related issues. *Id.* This experience clears the first concern raised by NYM.

With regard to NYM's second concern, the Court will limit at trial any testimony from Mr. Anderson, as necessary, that seeks to provide an opinion on the ultimate legal issue properly left to the jury in this case. Fed. R. Evid. 704. Finally, the Court determines that testimony from Mr. Anderson, and NYM's own expert in this area, will be reliable and helpful to the trier of fact. This testimony likely will "go well beyond the common knowledge of ordinary jurors and will assist the jury by providing evidence of relevant insurance industry standards." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 926 (D. Colo. 2017). This testimony from Mr. Anderson and NYM's expert will help the jury analyze NYM's conduct "in light of prevailing insurance industry standards." *Ramirez-Yanez v. Allstate Ins. Co.*, 2013 WL 1499199, at *2 (W.D. Wash. 2013).

**B.** **Jerry Lehman**

Mr. Lehman is a certified public accountant and the former CEO of JCCS. JCCS classifies Mr. Lehman as a "hybrid witness" with percipient knowledge of

the events in question and the ability to provide testimony on the extent of damages suffered by JCCS during the course of the state court litigation between JCCS and its former client in the form of his time spent supervising the litigation and as a result of NYM's alleged bad faith in adjusting JCCS's claim. NYM raises the point that the settlement agreement between JCCS and its former clients, Draggin' Y and the Peterses, obligates Draggin' Y and the Peterses to indemnify JCCS. (Doc. 478 at 13.) NYM further argues that Mr. Lehman should not be allowed to explain how JCCS can recover as "damages" reimbursement for the time that Mr. Lehman spent "overlooking" two lawsuits. *Id.*

JCCS contends that it listed Mr. Lehman as a "hybrid witness" out of an abundance of caution. JCCS argues that Mr. Lehman's proposed opinions would be admissible either as expert opinions under Federal Rule of Evidence 702, or lay opinions under Federal Rule of Evidence 701. (Doc. 454 at 11.)

Mr. Lehman will be allowed to testify as a fact witness as to his role at JCCS, including any knowledge of the advice that JCCS gave to Draggin' Y and the Peterses regarding the tax consequences of the underlying 1031 exchange that gave rise to the first state court action. Mr. Lehman may testify as to what he did, saw, or heard during the course of NYM's defense of that state court action. He may testify as to how many hours he spent, either in his capacity as CEO for JCCS

or as employee of JCCS, if applicable, "overlooking" the state court litigation. He may testify as to his billing rate while serving as CEO for JCCS, or as an employee of JCCS during the period of the state court litigation. He also many provide testimony regarding his knowledge, if any, as to why JCCS entered into the stipulated judgment with Draggin' Y and the Peterses to resolve the state court litigation.

    Mr. Lehman will not be permitted to testify as to his opinion regarding any damages suffered by JCCS during the period of the state court litigation. He will not be allowed to speculate or surmise on whether he could have spent the time "overlooking" the state court litigation on work for other clients and how much he believes that JCCS could have made from this other work that he might otherwise have able to perform. Mr. Lehman also will not be permitted to provide opinion testimony as to any damages suffered by JCCS during the period after the parties signed the stipulated settlement on November 14, 2014. The Court fails to see how JCCS has suffered any damages after the settlement as the settlement obligates Draggin' Y and the Peterses to indemnify JCCS. Draggin' Y and the Peterses also agreed to a covenant not to execute against JCCS when JCCS assigned its rights under the insurance policy with NYM.

**ORDER**

Accordingly, **IT IS ORDERED** that this NYM's motion in limine (Doc. 444) to exclude the testimony of Brad Anderson is **DENIED**. It is further ordered that NYM's motion in limine to exclude the testimony of Jerry Lehman is **GRANTED**, in part, and **DENIED,** in part.

DATED this 3rd day of February, 2020.

_____
Brian Morris
United States District Court Judge